FILED

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## UNITED STATES DISTRICT COURT

for the

2023 FEB 28  AM 11: 48

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA, FLORIDA

|  |  |
|---|---|
| Dorian Trevor Sykes _Petitioner_ | ) ) ) ) |
| v. | )  Case No.  5:23-cv-135-TPB-PRL |
|  | )  _(Supplied by Clerk of Court)_ |
| Warden, USP Coleman 2 _Respondent_ | ) ) ) |

_(name of warden or authorized person having custody of petitioner)_

### PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

**Personal Information**

1. (a) Your full name:  Dorian Trevor Sykes
   (b) Other names you have used:  Juan Johnson
2. Place of confinement:
   (a) Name of institution:  USP Coleman 2
   (b) Address:  P.O. Box 1034
       Coleman, Fl. 33521
   (c) Your identification number:  31185-039
3. Are you currently being held on orders by:
   ☑ Federal authorities    ☐ State authorities    ☐ Other - explain:

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
   (a) Name and location of court that sentenced you:  U.S. District Court
       Eastern District of Michigan
   (b) Docket number of criminal case:  19-cr-20550
   (c) Date of sentencing:  Nov. 2020
   ☐ Being held on an immigration charge
   ☐ Other _(explain)_:

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Decision or Action You Are Challenging

5.    What are you challenging in this petition:

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☑ Other *(explain)*: The BOP has purposely miscalculated my Home Detention Eligibility date by a total of (6) six months. (See Attachment).

6.    Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court:    N/A

(b)  Docket number, case number, or opinion number:

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

(d)  Date of the decision or action:

### Your Earlier Challenges of the Decision or Action

7.    **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☐ Yes      ☑ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:

(2)  Date of filing:

(3)  Docket number, case number, or opinion number:

(4)  Result:

(5)  Date of result:

(6)  Issues raised:

continued from page 3 of 10

Section 5. Decision or Action you are Challenging

Based on my sentencing computation data sheet, my Home Detention Eligibility date is 2-29-2024, that date, month and year is incorrect based on the fact that the Second Chance Act as it reads, was enacted on April 9, 2008, and therefore it applies in my circumstances. The Second Chance Act of 2007 P.L. 110-199 as enacted it amended 18 USC §3624 and provides that the director of the BOP shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to, and prepare for, the re-entry of that prisoner into the community. See 18 USC § 3624(c)(1), (2).    (See Exhibit 1).

In sum, the BOP is purposely limiting petitioner's placement in a community corrections center and home detention eligibility, by not considering the factors set forth in 18 U.S.C.S. §3621 (b). The BOP's regulations long ago been rendered unconstitutional, where they

Continued from page 3 of 10

limit inmates to the lesser of 10% of prisoner's sentence or six months without consideration of § 3621 (b) factors. (See Exhibit 2).

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

(b) If you answered "No," explain why you did not appeal: *Petitioner asserts, that he did not exhaust his administrative remedies with the BOP because the BOP's system would be moot (see attached)*

8.     **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☐ Yes            ☑ No

(a) If "Yes," provide:

    (1)  Name of the authority, agency, or court: _____

_____

    (2)  Date of filing: _____

    (3)  Docket number, case number, or opinion number: _____

    (4)  Result: _____

    (5)  Date of result: _____

    (6)  Issues raised: _____

_____

_____

_____

_____

(b) If you answered "No," explain why you did not file a second appeal:     *See above*

_____

9.     **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes            ☑ No

(a) If "Yes," provide:

    (1)  Name of the authority, agency, or court: _____

_____

    (2)  Date of filing: _____

    (3)  Docket number, case number, or opinion number: _____

    (4)  Result: _____

    (5)  Date of result: _____

    (6)  Issues raised: _____

_____

_____

continued from page 4 of 10

because the issues raised in the petition can only be resolved in the United States District Court. The BOP has consistently violated prisoner's constitutional rights, as it relates to 18 USC § 3624(c)(1),(2). Therefore, exhaustion would be futile. See, Zucker v. Meinfee, 2004 U.S. Dist. Lexis 724, 2004 WL 102779 (S.D. N.Y. Jan 21, 2004). (See Exhibit 2, Seth Murdock v. Dominic A. Gutierrez).

Exhaustion prerequisites in habeas corpus actions arising under 28 U.S.C.S. § 2241 are merely judicially imposed. For this reason, it follows that a court has the discretion to waive that requirement in certain circumstances.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____

(b) If you answered "No," explain why you did not file a third appeal:    *See above.*
_____

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes          ☑ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☐ Yes                    ☐ No

    If "Yes," provide:

    (1) Name of court: _____
    (2) Case number: _____
    (3) Date of filing: _____
    (4) Result: _____
    (5) Date of result: _____
    (6) Issues raised: _____
_____
_____
_____
_____

(b)    Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

    ☐ Yes                    ☑ No

    If "Yes," provide:

    (1) Name of court: _____
    (2) Case number: _____
    (3) Date of filing: _____
    (4) Result: _____
    (5) Date of result: _____
    (6) Issues raised: _____
_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c)    Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
       conviction or sentence:    _____N/A._____

11.    **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes                    ☑ No

If "Yes," provide:

(a)    Date you were taken into immigration custody: _____

(b)    Date of the removal or reinstatement order: _____

(c)    Did you file an appeal with the Board of Immigration Appeals?

       ☐ Yes                    ☐ No

       If "Yes," provide:

       (1)  Date of filing: _____

       (2)  Case number: _____

       (3)  Result: _____

       (4)  Date of result: _____

       (5)  Issues raised: _____

(d)    Did you appeal the decision to the United States Court of Appeals?

       ☐ Yes                    ☐ No

       If "Yes," provide:

       (1)  Name of court: _____N/A._____

       (2)  Date of filing: _____

       (3)  Case number: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

       (4)  Result: _____

       (5)  Date of result: _____

       (6)  Issues raised: _____

_____

_____

_____

_____

_____

12.  **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes      ☑ No

If "Yes," provide:

(a)  Kind of petition, motion, or application: _____

(b)  Name of the authority, agency, or court: _____

_____

(c)  Date of filing: _____

(d)  Docket number, case number, or opinion number: _____

(e)  Result: _____

(f)  Date of result: _____

(g)  Issues raised: _____

_____

_____

_____

_____

_____

## Grounds for Your Challenge in This Petition

13.  State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE**: The BOP is violating my Eighth Amendment, Cruel and Unusual Punishment, by not allowing me the needed time to readjust to society after my incarceration, pursuant to 18 U.S.C. § 3624(c)(1),(2).

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

See Exhibit 3, Sentence Computation Data Sheet, where the BOP has my Home Detention Eligibility Date as being: 02-29-2024. When in fact, that date should be 08-30-2023, based on my Projected Release: 08-30-2024.

(b) Did you present Ground One in all appeals that were available to you?

☐ Yes          ☑ No

GROUND TWO: The BOP has violated the Second Chance Act of 2007. Specifically, Petitioner is now within 19 months of his projected release date, and per the (SCA) the BOP is suppose to review him for RRC placement.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

Petitioner's case Manager, Ms. Rolle has told him that she would not be reviewing him for RRC placement, despite the (SCA) mandates of pre-release RRC placement of 17-19 months before an inmates projected release date. (See Exhibit 4, SCA & Pre-Release RRC placements.

(b) Did you present Ground Two in all appeals that were available to you?

☐ Yes          ☐ No

GROUND THREE: Increase public protection.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

One reason for referring an inmate to an RRC is to increase public protection by aiding the transition of the offender into the community. Petitioner has a high recidivism risk factor, with limited resources. Petitioner needs an appropriate amount of time in an RRC and home confinement. See 18 U.S.C. § 3624 (c).

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☑ No

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** The BOP refuses to consider the five factors enumerated in 18 USCS § 3621 (b) when it consider Petitioner for home confinement and RRC placement.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

See 18 USCS § 3624(C).

Petitioner submitted an inmate request to the Warden of USP Coleman 2, to no avail. (See Exhibit 1).

(b) Did you present Ground Four in all appeals that were available to you?

☐ Yes    ☑ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:

**Request for Relief**

15. State exactly what you want the court to do: Petitioner seeks an Order requiring the BOP to correct his Home Detention Eligibility date; Consider the five factors enumerated in 18 USCS § 3621(b) and § 3624(c); and be required to transfer Petitioner to an RRC for the last twelve months of his sentence.

This petition raises issues which are Ripe for Adjudication. See, Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L.Ed. 2d 681 (1967).

The BOP has purposely miscalculated Petitioner's Home Detention Eligibility date, and RRC placement for up to (12) months, per 18 U.S.C. § 3624 (c)(1),(2).

Accordingly, this case is now ripe for adjudication. Page 9 of 10

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

Jan. 27 th , 2024

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:   1 - 27 - 2024

Dorian T. Sykes

*Signature of Petitioner*

*Signature of Attorney or other authorized person, if any*

Exhibit 1

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| To: (Name and Title of Staff member) | Date: |
|---|---|
| Warden, USP - Coleman 2 | 1-8-2023 |
| From: Dorian Sykes | Register No.: 31185-039 |
| Work Assignment: None. | Unit: "K2" |

SUBJECT: (BRIEFLY STATE YOUR QUESTION OR CONCERN AND THE SOLUTION YOU ARE REQUESTING. Continue on ⸺ Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

    Based on my sentencing computation data sheet, my Home Detention Eligibility date is 2-29-2024, that date, month and year is incorrect based on the fact that the Second Chance Act as it reads, was enacted on April 9, 2008, and therefore it applies in my circumstances. The Second Chance Act of 2007, P.L. 110-199 as enacted, it amended 18 USC § 3624 and provides that the director of the BOP shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to, and prepare for, the re-entry of that prisoner into the community. See 18 USC § 3624(c)(1), (2).
    Such conditions may be used to place a prisoner in home confinement for the shorter of 10% of the term of imprisonment of that prisoner or 12 months. Petitioner's halfway house date was calculated using the old (and now amended) version of the statute which allowed a maximum of (6) month. That limitation no longer applies. It is clear that Congress intended that each inmate would be *considered* for a placement of the longest duration up to 12 months. It is significantly important to mention, and that no doubt exists, that the President signed the S.C.A., and that once signed, it was converted into law.
    Under such a law, it is the express will of Congress to *increase* the half-way house consideration to all inmates up to 12 months. See, June 24, 2010, Memorandum Providing Guidance to Staff, when making inmate's pre-release Residential Re-Entry Center decision.
    Assessment and decision making practices are to focus on RRC placement as a mechanism to reduce recidivism, reduction results in lost efficiencies, less victimization, and safer communities. General Concepts: The following general concept, apply to all RRC placement assessments and decision making.: Eligibility vs. appropriateness. When making RRC placement determination, it is critical that staff understand the difference between eligibility and appropriateness. *All inmates are statutorily eligible for up to 12 months pre-release RRC placement;* See June 24, 2010 Memorandum. See also, "Second Chance Act-Do You Want the Maximum Amount of Halfway House or Home Detention? Attached as Exhibit 1.
    It is clear, and no doubt exists that the Second Chance Act is now law, and for that reason, it is significantly important to mention that __Dorian Sykes__ qualifies to increase his halfway house placement up to 12 months. Also, it is important to mention that the Petitioner has been incarcerated for more than __20+__ years. It is clear then to see that the Petitioner qualifies to increase his home-detention eligibility date for up to 12 months. It is no doubt that the time __20+ years__ served in jail is enough to consider increasing his halfway house placement to accomplish the goals of the SCA, as it concerns his release and re-entry into the community after such a long period of incarceration. Last but not least, it is important to observe that Petitioner's long incarceration was served without any violations or incident reports of any seriousness.
    Therefore, __Dorian Sykes__ requests that his Home Detention Eligibility date be recalculated pursuant to the SCA, and that he be considered for placement in a community corrections facility and/or home confinement for up to, and including 12 months.

Respectfully Requested,

Dorian T. Sykes

Exhibit 2

SETH MURDOCK, Petitioner, v. DOMINIC A. GUTIERREZ, Respondent.
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
631 F. Supp. 2d 758; 2007 U.S. Dist. LEXIS 53794
Civil Action No. 3:06cv105 (BAILEY)
July 24, 2007, Decided
July 24, 2007, Filed

**Editorial Information: Prior History**

Murdock v. Gutierrez, 631 F. Supp. 2d 758, 2007 U.S. Dist. LEXIS 98784 (N.D. W. Va., 2007)

**Counsel**                    Seth Murdock, Petitioner, Pro se, Morgantown, WV.
For Dominic A. Gutierrez, Warden, Respondent: Betsy Steinfeld
Jividen, LEAD ATTORNEY, U.S. Attorney's Office - Whg, Wheeling, WV.
**Judges:** JOHN PRESTON BAILEY, UNITED STATES DISTRICT JUDGE.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Alleging that a policy of the Bureau of Prisons (BOP) limiting placement in a community corrections center (CCC) to prisoners serving the final 10 % of their sentences was unconstitutional, petitioner sought a writ of habeas corpus pursuant to 28 U.S.C.S. § 2241. Petitioner inmate filed an emergency motion for summary judgment. Respondent filed objections to a magistrate judge's report recommending that petitioner's request for relief be granted.Because BOP could not make placement and transfer determinations without considering the factors set forth in 18 U.S.C.S. § 3621(b), BOP regulations were invalid the extent that a prisoner's placement in a community corrections center was limited to the lesser of 10 % of prisoner's sentence or six months without consideration of § 3621(b) factors.

**OVERVIEW:** The BOP determined that petitioner met the qualifications for CCC placement and recommended that petitioner be transferred to a CCC for the last 10 % of the time served on his sentence. Petitioner argued that the BOP was required to consider the five factors enumerated in 18 U.S.C.S. § 3621(b) when it consider him for placement in a CCC under 18 U.S.C.S. § 3624(c). Petitioner sought an order requiring the BOP to transfer him to a CCC for the last six months of his sentence. Respondent argued that the BOP's decision to restrict CCC placements to prisoners serving the final ten percent of their sentences was a lawful categorical exercise of the BOP's discretion and that the factors enumerated in § 3621(b) were nit intended to limit or restrict the BOP's exercise of discretion. The court held that the BOP's regulations, which were set forth in 28 C.F.R. § 570.21, were invalid because the BOP could not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations. Thus, petitioner was entitled to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

**OUTCOME:** The court granted the habeas corpus petition, directed the BOP to consider petitioner for CCC placement, and granted petitioner's emergency motions for summary judgment and injunction.

**LexisNexis Headnotes**

***Civil Procedure > Judicial Officers > Magistrates > General Overview***

2ydcases                                1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Pursuant to 28 U.S.C.S. § 636(b)(1)(c), the court is required to make a de novo review of those portions of a magistrate judge's findings to which objection is made. However, the court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Failure to file timely objections constitutes a waiver of de novo review and a petitioner's right to appeal the court's order. 28 U.S.C.S. § 636(b)(1).

*Criminal Law & Procedure > Sentencing > Alternatives > Community Confinement*
*Criminal Law & Procedure > Sentencing > Alternatives > Home Detention*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

See 18 U.S.C.S. § 3624(c).

*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

See 18 U.S.C.S. § 3621(b).

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Prerequisites*

Exhaustion prerequisites in habeas corpus actions arising under 28 U.S.C.S. § 2241 are merely judicially imposed. For this reason, it follows that a court has the discretion to waive that requirement in certain circumstances.

*Constitutional Law > The Judiciary > Case or Controversy > Ripeness*

The ripeness doctrine is drawn from both U.S. Const. art. III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all. The basic rationale of ripeness is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two-fold aspect, requiring the court to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Criminal Law & Procedure > Sentencing > Alternatives > Community Confinement*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

18 U.S.C.S. § 3621(b) lists five factors that the Bureau of Prisons (BOP) must consider in making placement and transfer determinations. The 2005 regulations set forth in 28 C.F.R. § 570.21, which categorically limit the amount of time an inmate may be placed in a community corrections center (CCC), do not allow the BOP to consider these factors in full. The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of 18 U.S.C.S. § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

2ydcases                                          2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Although the Bureau of Prisons (BOP) does have some discretion under 18 U.S.C.S. § 3621(b) in determining the actual place of an inmate's confinement, the BOP is required to consider each of the five factors enumerated in § 3621(b) before making placement and transfer determinations.

*Criminal Law & Procedure > Sentencing > Alternatives > Community Confinement*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

The regulations of the Bureau of Prisons as set forth in 28 C.F.R. § 570.21 are invalid only to the extent that a prisoner's placement in a community corrections center is limited to the lesser of 10 % of his sentence or six months, without consideration of the five factors set forth in 18 U.S.C.S. § 3621(b).

Opinion

**Opinion by:**          JOHN PRESTON BAILEY

Opinion

{631 F. Supp. 2d 759} <u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>

<u>I. Introduction</u>

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. {631 F. Supp. 2d 760} By Standing Order entered on March 24, 2000, this action was referred to Magistrate Judge Seibert for submission of proposed report and a recommendation ["R & R"]. Magistrate Judge Seibert filed his R & R on May 2, 2007 [Doc. 22]. In that filing, the magistrate judge recommended that this Court grant the petitioner's request for relief [Doc. 22].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a de novo review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are {2007 U.S. Dist. LEXIS 2}addressed. *Thomas v. Arn,* 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). In addition, failure to file timely objections constitutes a waiver of de novo review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour,* 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R & R were due by May 16, 2007, within ten (10) days after being served with a copy of the R & R pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The Government, by counsel, timely filed its Objections [Doc. 23] on May 14, 2007. Accordingly, this Court will conduct a de novo review only as to the portions of the report and recommendation to which the parties objected. The remaining portions of the report and recommendation to which no objections have been filed will be reviewed for clear error.

<u>II. Factual and Historical Background</u>

Petitioner initiated this case on October 5, 2006, by filing an Application for Habeas Corpus [Doc. 1] pursuant to 28 U.S.C. § 2241, in which he seeks an order directing the Bureau of Prisons ("BOP") to transfer him to a Community Corrections Center ("CCC") 1 for the last {2007 U.S. Dist. LEXIS 3}six

2ydcases                              3

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

months of his term of imprisonment. On October 16, 2006, the petitioner paid the required $ 5.00 filing fee [Doc. 6]. On November 7, 2006, Magistrate Judge James E. Seibert made a preliminary review of the file and determined that summary dismissal was not warranted at that time [Doc. 7]. Consequently, the respondent was directed to file an answer to the petition and did so on December 7, 2006 [Doc. 9]. The petitioner filed a reply brief on December 26, 2006 [Doc. 10].

On February 20, 2007, the petitioner filed an Emergency Motion for Summary Judgment [Doc. 12], which he later amended on February 28, 2007 [Doc. 13]. The respondent did not file a response to the petitioner's Motion. On March 6, 2007, Magistrate Judge Seibert reviewed the petitioners' Motion and determined that additional information was needed [Doc. 14]. Accordingly, the respondent was directed to file the necessary information and did so on March 16, 2007 [Doc. 16]. On March 15, 2007, petitioner filed a Notice [Doc. 15] {2007 U.S. Dist. LEXIS 4}regarding a recent decision by the Tenth Circuit Court of Appeals pertinent to the issue raised in this action.

This matter is now before the Court for consideration of Magistrate Judge Seibert's report and recommendation.

### I. Facts

On June 12, 2003, the petitioner was sentenced in the United States District {631 F. Supp. 2d 761} Court for the Eastern District of Michigan to a twenty-seven (27) month term of confinement for Possession of False Papers to Defraud the United States in violation of 18 U.S.C. §§ 2 and 1002. Petitioner was also sentenced to three years supervised release. On July 7, 2006, the petitioner's supervised release was revoked because he left the jurisdiction of the Court without permission. As a result, the petitioner was designated to the Federal Correctional Institution in Morgantown (FCI Morgantown), West Virginia. Assuming good time credit, the petitioners' projected release date is September 5, 2007.

On February 12, 2007, the BOP reviewed the petitioner's eligibility for CCC placement. Upon review, the BOP determined that the petitioner met the qualifications for CCC placement and recommended that petitioner be transferred to a CCC for the last 10% of the time served on his sentence, {2007 U.S. Dist. LEXIS 5}or on July 21, 2007; in other words, the last 46 days of his sentence served.

### II. Contentions of the Parties

Petitioner raises the following ground in his Application for Habeas Corpus:

(1) The Bureau of Prisons' policy of transferring prisoners to a CCC for the last 10% of their term of imprisonment has been ruled unconstitutional.

The Government contends that the petition should be dismissed because:

(1) Petitioner has failed to exhaust his administrative remedies;

(2) The facts of the complaint are not yet ripe for review;

(3) The February 2005 Rules are valid and entitled to substantial deference; and

(4) The Bureau properly exercised its discretion in a categorical manner by limiting placement in CCC's to the last ten percent of an inmate's sentence served, not to exceed six months.

### III. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. *See* BOP Program Statement 7310.04. However, on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a

2ydcases                                             4

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



memorandum stating that this practice was inconsistent with 18 U.S.C. § 3624(c) which, in its opinion, {**2007 U.S. Dist. LEXIS 6**}limited an inmate's placement in a CCC to the lesser of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, 2 found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b), which states:

> {**631 F. Supp. 2d 762**} The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards {**2007 U.S. Dist. LEXIS 7**}of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] {**2007 U.S. Dist. LEXIS 8**}confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20- 21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence being served,** not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .28 C.F.R. § 570.21.

2ydcases                                                     5

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## IV. Analysis

### A. Exhaustion

The petitioner admits that he has not exhausted his administrative remedies alleging that raising his claim through the internal grievance system would be moot because the issues raised in the petition can only be resolved in the United States District {2007 U.S. Dist. LEXIS 9}Court. Federal inmates generally are required to exhaust their administrative remedies prior to filing a § 2241 petition. *See, e.g., Martinez v. Roberts,* 804 F.2d 570 (9th Cir. 1996); *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757 (3d Cir. 1996); *Colton v. Ashcroft,* 299 F.Supp. 2d 681 (E.D. Ky 2004). However, a number of courts have found that requiring inmates to challenge the BOP's policy regarding placement in a CCC through the administrative process would be futile. *See, e.g., Fagiolo v. Smith,* 326 F. Supp. 2d 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c); *Zucker v. Meinfee,* 2004 U.S. Dist. LEXIS 724, 2004 WL 102779 (S.D.N.Y. Jan 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile).

{631 F. Supp. 2d 763} To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. For this reason, it follows {2007 U.S. Dist. LEXIS 10}that a Court has the discretion to waive that requirement in certain circumstances. *See LaRue v. Adams,* 2006 U.S. Dist. LEXIS 38934, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions). Here, it is not disputed that the petitioner failed to exhaust his administrative remedies prior to filing suit in this Court. However, exhaustion would be futile in this instance "because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)." *Fagiolo v. Smith,* 326 F.Supp.2d at 590. Accordingly, this Court **finds** that exhaustion is waived and that the case proceed to a determination on the merits.

### B. Whether Petition Raises Issues Which Are Ripe for Adjudication

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 807, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003). {2007 U.S. Dist. LEXIS 11}"The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *Metzenbaum v. Fed. Energy Regulatory Comm'n,* 219 U.S. App. D.C. 57, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two-fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

withholding court consideration.*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967) (overruled on other grounds). Since the initiation of this case, the BOP has made a formal recommendation as to the petitioner's CCC placement. Accordingly, this case is now ripe for adjudication.

## C. The Constitutionality and Validity of the 2005 Rules

### 1. Petitioner's contentions

In his {2007 U.S. Dist. LEXIS 12}petition, the petitioner asserts that he was told by his counselor, that as a matter of policy, he could not be transferred to a CCC until the last 10% of his sentence, or until approximately the last 45 days of his sentence. The petitioner asserts that such policy has been ruled unconstitutional by the Second, Third and Eighth Circuits and he is being unlawfully denied transfer to a CCC for the last six months of his sentence. As relief, the petitioner request the Court grant his writ and order the BOP to transfer him to a CCC for the last six months of his sentence.

In support of his claims, the petitioner asserts that the BOP's 10% policy represents a categorical rule which places durational limits on CCC confinement. The {631 F. Supp. 2d 764} petitioner asserts such rule contradicts the plain meaning of 18 U.S.C. § 3621(b) and has been found unlawful by the Second, Third and Eighth Circuits because it contravenes unambiguously expressed congressional intent and the ex post facto clause of the United States Constitution. In addition, although the petitioner concedes that the BOP has discretion under § 3621(b) to make placement determinations, the petitioner asserts that § 3621(b) sets specific parameters {2007 U.S. Dist. LEXIS 13}which limit that discretion. Therefore, the petitioner asserts that the BOP may not implement categorical rules which do not take into account the limits of its discretion.

### 2. Respondent's contentions

In its response to the Court's show cause order, the respondent argues that the February 2005 rules are valid because the BOP has properly exercised its discretion in a categorical manner through its rule-making power. In support of this claim, the respondent argues that 18 U.S.C. § 3624 (c) governs his claim and not 18 U.S.C. § 3621(b) as the petitioner suggests. In addition, the respondent argues that the BOP's interpretation of the statute is entitled to substantial deference under the standard set forth in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

Second, the respondent argues that § 3621(b) does not require the Bureau to consider transferring inmates to any facility. Moreover, the respondent argues that the BOP has broad discretion in designating the place of a prisoner's imprisonment. Given the Bureau's sweeping authority," the respondent asserts that "its method for making placement determinations is entitled to substantial deference, and inmates {2007 U.S. Dist. LEXIS 14}such as Petitioner do not have the statutory right under § 3621(b) to require the Bureau to consider transferring them to a CCC or any other facility at any particular time." Response to Show Cause Order [Doc. 9] (hereinafter Response) at 16.

To this end, the Court does not believe that the petitioner is arguing that § 3621(b) requires that the BOP consider him for placement in a CCC. Instead, the Court understands the petitioner's argument to be that the BOP may consider him for placement in a CCC under § 3624(c), but in doing so, must consider the five factors enumerated in § 3621(b). Accordingly, the Court finds this argument to be moot and has not considered it in more detail throughout this Order.

Third, the respondent argues that the Supreme Court has upheld the BOP's ability to categorically exercise the discretion Congress has statutorily granted it. *See* Response at 17 (citing *Lopez v. Davis,* 531 U.S. 230, 233-34, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001)). The respondent further

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

argues that the issue presented in this case is strikingly similar to that before the Supreme Court in **Lopez**. Therefore, the respondent asserts that "[t]he Bureau's decision to restrict CCC placements to prisoners serving the final ten **{2007 U.S. Dist. LEXIS 15}**percent of their sentences is a lawful categorical exercise of the agency's discretion, just as the categorical exclusion of certain crimes from early release eligibility was lawful in Lopez." **Id.** at 18.

Fourth, the respondent asserts that § 3621(b)'s statutory language and legislative history show that the statute's listing of certain factors does not curb the Bureau's discretion. In support of this contention, the respondent asserts that the provisions of § 3621(b) make it plain that the Bureau has the discretion, but not the duty to consider the enumerated factors in making decisions. The respondent relies on Congress's use of the word "may," as opposed to "shall" in the statute. In addition, the respondent asserts that the legislative **{631 F. Supp. 2d 765}** history shows that the enumerated factors were not intended to limit or restrict that BOP's exercise of its discretion under § 3621(b). Therefore, the respondent argues that the factors enumerated in § 3621 were intended to be nonexclusive and that they do not limit the Bureau's discretion.

Fifth, the respondent contends that the Bureau did in fact consider the five enumerated factors in § 3621(b) when issuing the February 2005 rules. In support of **{2007 U.S. Dist. LEXIS 16}**this claim, the respondent asserts that "[i]n proposing the 2005 Rules, the Bureau considered the resources of the facility contemplated, . . . when it reasoned that CCC's are 'particularly well suited as placement options for the final portion of the offenders' prison terms.'" Response at 22 (quoting 70 Fed. Reg. at 1660). In addition, the Bureau reasoned that "'[b]y ensuring that offenders sentenced to prison terms not be placed in CCCs except during the last ten percent of their prison sentences (not to exceed six months), the new rule will help ensure that CCCs remain available to serve the purposes for which their resources make them best suited." **Id.** at 23. Moreover the respondent asserts that the rule expressly incorporates the length of the prisoner's sentence into an inmate's CCC placement for purposes of determining the length of time necessary to transition back into the community. **Id.** Also considered were policy statements pertinent to statements issued by the Sentencing Committee and the statutory mandate that no favoritism be given prisoners of high social or economic status. **Id.** The respondent asserts that the February 2005 Rules make it clear that the Bureau continues **{2007 U.S. Dist. LEXIS 17}**to consider the exhaustive list of factors in § 3621(b) when making its placement decisions. **Id.** at 24.

Finally, the respondent asserts that the February 2005 Rules do not violate the ex *post facto* clause because they are not impermissibly retroactive, nor do they increase the punishment for petitioner's crime. The Court agrees that the February 2005 Rules were implemented after petitioner's supervised release was revoked and were therefore, not applied to him retroactively. Nor do the February 2005 Rules increase the punishment for the petitioner's crime. Thus, the petitioner cannot state an *ex post facto* claim and such claim will not be discussed further.

### 3. Pertinent Case Law

The Third Circuit Court of Appeals was the first Court of Appeals to address the issue raised in the instant case. In **Woodall v. Federal Bureau of Prisons,** 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. *See Woodall* at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. **Id.** Specifically, the Third Circuit found that **{2007 U.S. Dist. LEXIS 18}**the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." **Id.** at 237. More specifically,

2ydcases                                                          8

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to {631 F. Supp. 2d 766} consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.*Id.* at 244.

In reaching this conclusion, the Third Circuit rejected the same arguments made by the respondent in this case. Moreover, the three other Courts of Appeals who have addressed this issue have made similar findings. *See Wedelstedt v. Wiley,* 477 F.3d 1160 (10th Cir. 2007); {2007 U.S. Dist. LEXIS 19}*Levine v. Apker,* 455 F.3d 71, 85-87 (2d Cir. 2006); *Fults v. Sanders,* 442 F.3d 1088, 1092 (8th Cir. 2006). Therefore, although none of the Circuit opinions have been unanimous, and in fact, there were strong dissents in each case, 3 the clear weight of authority at this time suggests that the regulations are invalid. Upon a review of those cases, including the dissenting opinions, this Court is persuaded that the regulations are invalid for the reasons set forth in *Woodall, Fults, Levine and Wedelstedt.*

### 4. Discussion

The language of § 3621 is clear. Each of the five enumerated factors must be considered by the BOP in making placement and transfer determinations. The 2005 regulations simply do not allow the BOP to consider the three individualized factors. Those factors include the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement {2007 U.S. Dist. LEXIS 21}by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate. *See* 18 U.S.C. § 3621(b)(2)-(4). Accordingly, the Court need not go past the first step of the *Chevron* analysis. Even if it could, the BOP's interpretation is contrary to the statute and is not due deference.

Moreover, this Court agrees that *Lopez v. Davis,* **supra,** fails to support the BOP's categorical decision-making at question in this case. In *Lopez,* the Supreme Court upheld the validity of a BOP rule excluding certain inmates from early release under 18 U.S.C. § 3621(e)(2)(B). *Lopez,* 531 U.S. at 243-44. Under that statute, the BOP has been given the discretion to reduce the prison term of an inmate convicted of a "non-violent" offense if the inmate successfully completes a substance abuse program. *Id.* at 232. Because the statute does not define what constitutes a "nonviolent" offense, the BOP implemented a regulation categorically denying early release to prisoners convicted of a felony involving "the carrying, possession, or use of a firearm." *Id.* The *Lopez* Court upheld the categorical {2007 U.S. Dist. LEXIS 22}decision making {631 F. Supp. 2d 767} of the BOP because the statute does not define the term "nonviolent offense," and at the same time, gives the BOP the discretion to determine which inmates are offered pre-release. *Id.* 235-238. Therefore, the Court reasoned that it was permissible for the BOP to use its discretion to define the term "nonviolent offense" and to categorically exclude certain inmates for early release consideration based on that definition. *Id.* The Court's decision though, was clearly grounded in the discretion afforded the BOP under the statute and the ambiguity in defining what constitutes a nonviolent offense. None of those factors are at play in the instant case.

Although the BOP does have some discretion under § 3621(b) in determining the actual place of an inmate's confinement, the BOP is required to consider each of the five factors before making placement and transfer determinations. There is no ambiguity that the BOP can or must define. In

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

addition, *Lopez* is further distinguishable because § 3621(e)(2)(B) does not require the BOP to make individualized determinations as does § 3621(b). However, individualized determinations are not necessarily dispositive of the issue. In *Lopez,* {2007 U.S. Dist. LEXIS 23}the Court stated that "[e]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez,* 531 U.S. at 243-44 (internal quotations omitted). Nonetheless, sentencing recommendations and the history and characteristics of the prisoner are not generally applicable. Moreover, Congress does "appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors." *Woodall,* 432 F.3d at 247.

Although this Court agrees with the four Courts of Appeals and believes the petitioner's writ of habeas corpus should be granted, the petitioner is advised that such decision does not entitle him to an Order from this Court directing that he be immediately transferred to a CCC. The Court has determined that the BOP's regulations are invalid only to the extent that his placement in a CCC is limited to the lesser of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Thus, in granting the instant {2007 U.S. Dist. LEXIS 24}writ, petitioner is merely entitled to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

## V. Petitioner's Emergency Motion for Summary Judgment

In his Emergency Motion for Summary Judgment [Doc. 12], the petitioner asserts that it is undisputed that the exhaustion requirement is futile and moot. In addition, the petitioner asserts that since the BOP has made a formal decision as to his CCC placement, this action is ripe for adjudication. Finally, the petitioner argues that because the vast majority of Courts have concluded that the plain language of § 3621(b) is clear, the BOP's categorical exercise of discretion as it relates to the issue raised in the instant case, is invalid and contravenes congressional intent. Thus, the petitioner asserts that because his claims raise an issue of substantial merit, to which there is no substantive defense of opposition, he is entitled to relief as a matter of law.

## VI. Conclusion

Based on the foregoing, it is the opinion of this Court that the petitioner's § 2241 petition [Doc. 1] should be, and is hereby **GRANTED,** and the BOP is directed to consider this petitioner, Seth Murdock, for {631 F. Supp. 2d 768} CCC placement. Moreover, {2007 U.S. Dist. LEXIS 25}inasmuch as the Court finds that the petitioner is entitled to relief in this case, petitioner's Emergency Motion for Summary Judgment [Doc. 12] and Emergency Motion for Injunction [Doc. 26] are also **GRANTED.**

The Clerk is directed to mail copies of this Order Adopting the Report and Recommendation to the *pro se* petitioner, the Bureau of Prisons, and to all counsel of record.

**DATED:** July 24, 2007.

**JOHN PRESTON BAILEY**

**UNITED STATES DISTRICT JUDGE**

**Footnotes**

1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Since the filing of this action, the BOP now refers to such centers as Residential Release Centers ("RRC"). For purposes of this Order, however, the Court will refer to these facilities as CCC's.

2

*See **Goldings v. Winn,*** 383 F.3d 17 (1st Cir. 2004); ***Elwood v. Jeter,*** 386 F.3d 842 (8th Cir. 2004); ***Cato v. Menifee,*** 2003 U.S. Dist. LEXIS 21289, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003) (collecting cases).

3

*See **Wedelstedt,*** 477 F.3d at 1169-71 (Hartz, Circuit Judge, dissenting)(agreeing that § 3621 requires the BOP to consider each of the five enumerated factors, but finding that the BOP properly performed such duty when it reasonably considered each of the five factors in promulgating its general rule); ***Levine,*** 455 F.3d at 87-91 (Raggi, Circuit Judge, dissenting) (construing the rule as "a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally" with limited statutorily identified exceptions including "those catalogued in § 3621(b)," finding the rule comports with § 3624(c)'s express time limitations, and finding ***Lopez*** supports {2007 U.S. Dist. LEXIS 20}the Bureau's "categorical rejection of CCCs for general § 3621(b) designations (i.e., placements not involving § 3624(c) or other statutory concerns)"); ***Fults,*** 442 F.3d at 1093 (Riley, Circuit Judge, dissenting) (finding that the "BOP's categorical rules governing transfer of inmates to CCCs, and implementing section 3624(b), do not conflict with the factors enumerated in section 3621(b)"); ***Woodall,*** 432 F.3d at 251-52 (Fuentes, Circuit Judge, dissenting) (agreeing that § 3621(b) requires the BOP to consider each of the five enumerated factors listed in the statute, but finding that the BOP is not required to consider the factors until the inmate is actually considered for transfer and that such consideration is not required "until the lesser of six months or ten percent of the inmate's sentence remains").

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 3

```
  CLPD5  540*23 *          SENTENCE MONITORING          *    01-08-2023
PAGE 001        *           COMPUTATION DATA            *    07:31:11
                            AS OF 01-08-2023


REGNO..: 31185-039 NAME: SYKES, DORIAN TREVOR


FBI NO..........: 144521TB3          DATE OF BIRTH: 09-10-1983  AGE:  39
ARS1............: CLP/A-DES
UNIT............: K-2                QUARTERS.....: Z02-136UAD
DETAINERS.......: NO                 NOTIFICATIONS: NO


FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 02-29-2024


THE INMATE IS PROJECTED FOR RELEASE: 08-30-2024 VIA GCT REL



---------------------CURRENT JUDGMENT/WARRANT NO: 030 -----------------------

COURT OF JURISDICTION...........: MICHIGAN, EASTERN DISTRICT
DOCKET NUMBER...................: 03-80028
JUDGE...........................: GOLDSMITH
DATE SENTENCED/PROBATION IMPOSED: 02-15-2005
DATE SUPERVISION REVOKED........: 11-16-2020
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 04-06-2021
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO

             FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $300.00       $00.00        $00.00       $00.00

RESTITUTION...: PROPERTY: NO  SERVICES: NO       AMOUNT: $166,230.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 551     18:2113 ROBBERY BANK
OFF/CHG: CT 1 18:2113(A),2 BANK ROBBERY, AIDING & ABETTING CT 1
         18:924(C)(1) & 2 CARRY & BRANDISHING OF A FIREARM DURING A
         CRIME OF VIOLENCE, AIDING & ABETTING CT 2  18:922(G)(1)
         FELON IN POSSESSION OF A FIREARM CT 4

 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:   60 MONTHS
 DATE OF OFFENSE................: 12-14-2002




G0002       MORE PAGES TO FOLLOW . . .
```

Exhibit 4

Second Chance Act of 2007 & Pre-Release RRC Placements

The Second Chance Act of 2007 (the "Act"), signed into law on April 9, 2008, changes the Bureau of Prisons' (BOP) statutory authorities for making pre-release residential re-entry center (RRC) placement decisions. The changes are described below:

- The maximum time allowed for pre-release RRC placement is increased to 12 months (from 6), and there is no longer a limit based on the percentage of term to be served. The maximum time allowable for pre-release home confinement remains 6 months, or 10 percent of the term of imprisonment for that inmate, whichever is shorter.

- BOP staff will approach every inmate's assessment with the understanding that the inmate is now eligible for a maximum 12-month pre-release RRC placement.

- Staff will review inmates for pre-release RRC placements 17-19 months before their projected release dates.

- Inmates previously reviewed for pre-release RRC placement, but not yet transferred to an RRC, will be reconsidered using the new standards allowing a maximum 12-month placement.

- Written approval must be obtained from the Regional Director if staff determine that a period in excess of six months may be needed on an individual case.

- Pre-release RRC placement decisions must be made on an individual basis in every inmate's case according to new criteria identified in the Act, in addition to criteria in 18 U.S.C. § 3621(b), which include resources of the facility being considered, the nature and circumstances of the offense, and the history and characteristics of the inmate.

- Sentencing court orders, recommendations, or requests directing an inmate's placement in an RRC lack binding effect, so the BOP is not required to follow such directives.

- The BOP will be issuing new federal regulations regarding pre-release RRC placements. This process takes several months to complete. BOP staff will be notified as soon as the new regulations take effect.